UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHRISTINA M. SEABOLT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-358 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Christina M. Seabolt, on September 7, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Christina M. Seabolt, filed an application for Disability Insurance Benefits on June 28, 2014, alleging a disability onset date of April 1, 2013. (Tr. 20). The Disability Determination Bureau denied Seabolt's application on September 29, 2014, and again upon reconsideration on November 17, 2014. (Tr. 20). Seabolt subsequently filed a timely request for a hearing on December 3, 2014. (Tr. 20). A video hearing was held on July 28, 2016, before Administrative Law Judge (ALJ) Matthew Johnson, and the ALJ issued an unfavorable decision on August 31, 2016. (Tr. 20-32). Vocational Expert (VE) Clifford M. Brady testified at the hearing. (Tr. 20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Seabolt met the insured status requirements of the Social Security Act through June 30, 2019. (Tr. 22). At step one of the five-step sequential analysis for determining whether an

individual is disabled, the ALJ found that Seabolt had not engaged in substantial gainful activity since April 1, 2013, the alleged onset date. (Tr. 22).

At step two, the ALJ determined that Seabolt had the following severe impairments: depression, anxiety, and panic disorder with agoraphobia. (Tr. 22). The ALJ indicated that Seabolt also was diagnosed with gastroesophageal reflux disease (GERD), back pain, and obesity. (Tr. 22). However, the physical exams in the record showed no abnormalities other than her obesity. (Tr. 22). Therefore, the ALJ found that Seabolt's back pain, obesity, and GERD were non-severe impairments. (Tr. 22).

At step three, the ALJ concluded that Seabolt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ considered Seabolt's mental impairments, singly and in combination, against the criteria set forth in Listings 12.04 and 12.06. The ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 23). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 23).

The ALJ determined that Seabolt had a mild restriction in activities of daily living. (Tr. 23). Seabolt reported that she cared for her three children, she cared for her own personal hygiene, and she prepared basic meals. (Tr. 23). However, she needed reminders to take her medication at night. (Tr. 23).

2

The ALJ found that Seabolt had moderate difficulties in social functioning. (Tr. 23). Seabolt indicated that she had increased anxiety when she was in public and that she needed her husband to go to the grocery store. (Tr. 23). However, the ALJ noted that Seabolt testified that she went to the gym, took her children to the pool, and regularly attended therapy sessions and appointments with her psychiatrist. (Tr. 23). Also, the ALJ noted that Seabolt did not have any problems getting along with family, friends, or neighbors. (Tr. 23).

The ALJ determined that Seabolt had moderate difficulties with concentration, persistence, or pace. (Tr. 23). Seabolt indicated that her ability to maintain attention and concentration was severely limited, yet the ALJ noted that the treatment notes provided by Seabolt's psychiatrist, Dr. Mario Robbins, indicated that her mental status exams showed her concentration level was good. (Tr. 23). Also, the ALJ found that Seabolt did not experience any episodes of decompensation which would have been of extended duration. (Tr. 24). Because Seabolt's limitations did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation which had been of extended duration, the ALJ found that the paragraph B criteria was not satisfied. (Tr. 24). Additionally, the ALJ found that the paragraph C criteria was not satisfied. (Tr. 24).

After consideration of the entire record, the ALJ then assessed Seabolt's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, carry out, remember and perform simple, routine tasks that involve simple work-related decisions. She has the ability to adapt to only routine workplace changes. The claimant can briefly, superficially and causally interact with supervisors, coworkers and the general public.

(Tr. 25). The ALJ explained that in considering Seabolt's symptoms he followed a two-step process. (Tr. 25). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Seabolt's pain or other symptoms. (Tr. 25). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Seabolt's functioning. (Tr. 25).

The ALJ determined that Seabolt's medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 26). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 26). The ALJ found that the medical record did not support any additional restrictions in the Seabolt's RFC. (Tr. 26).

As for the opinion evidence, the ALJ assigned Dr. Robbins' opinions partial weight. (Tr. 28). The ALJ noted that while Dr. Robbins treated Seabolt his opinions were partially inconsistent with each other and his treatment notes. (Tr. 28). The ALJ indicated that he assigned more weight to the opinions of the State agency psychological consultants because they provided specific work-related mental limitations and had specialized knowledge of the Social Security Administration's disability program. (Tr. 29).

The ALJ assigned little weight to Seabolt's treating licensed mental health counselor, Susan Alamillo. (Tr. 29). The ALJ indicated that Alamillo, as a mental health counselor, was not an acceptable medical source for purposes of Social Security adjudication. (Tr. 29). Additionally, Alamillo's finding that Seabolt could not go back to her past relevant work as a pharmacy technician was an issue reserved for the Commissioner. (Tr. 29).

Finally, the ALJ assigned great weight to the State agency psychological consultants, Dr. Amy Johnson and Dr. J. Gange. (Tr. 29). The ALJ found that the State agency consultants' opinions were consistent with the clinical exams in the record. (Tr. 29). Specifically, their opinions were consistent with Dr. Robbins' findings from November of 2014. (Tr. 29).

At step four, the ALJ found that Seabolt was able to perform her past relevant work as a courier. (Tr. 30). The ALJ determined that Seabolt's work as a courier did not require the performance of work-related activities precluded by her RFC. (Tr. 30). The ALJ found that Seabolt had not been under a disability, as defined in the Social Security Act, from April 1, 2013, through the date of this decision, August 31, 2016. (Tr. 32).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); see *Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant

work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Seabolt has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings. In her appeal, Seabolt has argued that the ALJ: (1) failed to evaluate the side effects of her medication and otherwise evaluated her subjective symptoms improperly; (2) the listing analysis was wrong; and (3) the RFC was wrong.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the

ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

Seabolt has argued that the ALJ failed to evaluate the side effects of her medication, as required by 20 C.F.R. § 404.1529(c)(3)(iv). She testified that her medication made her extremely drowsy and gave her blurred vision. (Tr. 60). Additionally, she indicated that she dozed off every day for two or three hours. (Tr. 60). Seabolt represented to her doctors that she felt tired after taking her medications and that the medications made her sleep more. (Tr. 367, 784). The VE testified that there would be no work available for anyone who was off task more than ten percent of the workday. (Tr. 69).

The ALJ found that Seabolt's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 25-26). The ALJ determined that the

8

medical record, Seabolt's daily living activities, and her work in 2014 as a courier did not support her allegations regarding the severity of her limitations. However, the ALJ's decision was devoid of any evaluation as to the side effects of Seabolt's medication.

The Commissioner has acknowledged that Seabolt reported fatigue as a side effect to her medical providers. However, the Commissioner contends that Seabolt has not established that her alleged fatigue was a side effect of her medications by citing medical records from Dr. Robbins that noted "medication side effects: no." (Tr. 730, 749). The ALJ included no such argument in his decision, and so the court will not consider this argument. *See* **Parker v. Astrue**, 597 F.3d 920, 922 (7th Cir. 2010) (noting that **SEC v. Chenery Corp.**, 318 U.S. 80, 87-88 (1943), "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself has not embraced").

"The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process." *See* **Flores v. Massanari**, 19 F. App'x. 393, 399 (7th Cir. 2001). Thus, side effects of medication are to be considered when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. SSR 16-3p. The ALJ made no mention of the impact Seabolt's medications had on her ability to work. An ALJ "cannot rely only on the evidence that supports [his] opinion." **Yurt v. Colvin**, 758 F.3d 850, 859 (7th Cir. 2014) (quoting **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also* **Scrogham v. Colvin**, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Thus, the ALJ erred

9

by failing to consider Seabolt's side effects, especially considering that the VE testified that an individual could not be off task for more than ten percent of the workday.

Moreover, the ALJ determined that Seabolt's activities of daily living did not support the severity of her allegations. Seabolt testified that her mental impairments left her unable to work or interact with others. Yet, the ALJ indicated that Seabolt performed a variety of household chores, shopped in stores, took her child to the pool, and helped her children with their homework. (Tr. 30). The ALJ also noted that in 2014 Seabolt worked as a courier, which required her to travel in public and interact with others. (Tr. 30). However, Seabolt asserts that the ALJ failed to note that many of her chores were done during manic episodes and when she went out in public she was accompanied by her husband or teenage son. (Tr. 55-56). Also, her work as a courier was part-time and was given to her by her husband where she was assisted by him. (Tr. 52).

The Seventh Circuit has held that an ALJ cannot use activities of daily living to discredit a claimant's subjective symptoms without considering: (1) how the claimant is specifically able to accomplish those activities; (2) the differences between working around the house with breaks and at her own pace versus meeting the demands of competitive, full-time employment; and (3) the assistance the claimant gets from others to perform the activities. *See e.g.*, ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000); ***Gentle v. Barnhart***, 430 F.3d 865, 867-68 (7th Cir. 2005); ***Moss v. Astrue***, 555 F.3d 556, 562 (7th Cir. 2009); ***Bjornson v. Astrue***, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ has not done so in the instant matter. Specifically, the ALJ failed to consider that as a courier she only worked five hours a day, three to four days a week, and was accompanied by her husband. (Tr. 52). The VE testified that there would be no work available

for anyone who could not work eight hours a day, five days a week, and who required a companion to work. (Tr. 69-70).

The ALJ provided evidence in support of his decision that Seabolt's medical record did not support her allegations regarding the severity of her limitations. But this finding, even if accurate and supported, cannot constitute the sole remaining justification for the ALJ's adverse testimony evaluation. *See* **Hill v. Colvin**, 807 F.3d 862, 869 (7th Cir. 2015) (explaining that a claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence"). Courts repeatedly have instructed ALJs that, without more, such evidentiary summaries are not adequate to support a symptom analysis or an RFC assessment. *See*, *e.g.*, **Larson v. Colvin,** 26 F. Supp. 3d 798, 811 (N.D. Ill. 2014) ("[The ALJ] could not simply summarize the evidence and say it didn't support Mr. Larson's allegations. Just as an expert's *ipse dixit* is not acceptable ... neither is an ALJ's. That is the whole point of the logical bridge requirement.").

The ALJ has failed to provide a logical bridge from the evidence to his conclusion that Seabolt's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Thus, the ALJ's evaluation of Seabolt's symptoms was patently wrong. On remand, the ALI is directed to evaluate Seabolt's subjective symptoms pursuant to SSR 16-3p.

Seabolt also has argued that the ALJ's listing analysis was inadequate. She contends that the ALJ failed to evaluate evidence that supported allowing the claim. The ALJ is not permitted to cherry-pick from the evidence and select only those facts which support his conclusion. **Scrogham v. Colvin**, 765 F.3d 685, 699 (7th Cir. 2014) (holding that the ALJ's apparent selection of only facts from the record that supported the conclusion, while disregarding facts

that undermine it, is an error in analysis that requires reversal). Because this case already is being remanded, the court need not reach the issue of whether the ALJ's listing analysis was improper.

Finally, Seabolt contends that the RFC was not supported by substantial evidence. Again, Seabolt argues that the ALJ cherry-picked from the record, citing only evidence that supported his RFC finding. Seabolt asserts that the ALJ erred in evaluating the medical opinions. Lastly, she has argued that the ALJ failed to consider her non-severe physical impairments. The ALJ should consider all impairments, even if they are non-severe, in the RFC analysis. *See* **20 C.F.R. § 404.1545(a)(1)** ("We will assess your residual functional capacity based on *all* the relevant evidence in your case record.") (emphasis added). Since this matter already is being remanded, the court need not consider if the RFC was supported by substantial evidence.

Seabolt has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 28th day of February, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge